OPINION OF THE COURT
John A. Milano, J.
Can the plaintiff in a personal injury action preclude the defendant from calling to the stand a doctor who examined plaintiff on behalf of the defendant? At first blush this question would appear nonsensical. It is standard practice for a personal injury defendant to schedule a physical examination of the plaintiff and then subsequently call the examining doctor at trial to testify as to his findings. However, in the *719 case at bar, plaintiffs attorney on the eve of the damages portion of a bifurcated trial has moved this court to preclude defendant’s examining doctor. Plaintiffs motion presents a novel issue which has never before been presented to this court and which, as research has revealed, has not been considered in any reported decision. However, before turning to the merits of plaintiffs application, a brief factual history is essential.
This is a personal injury action arising from an automobile accident. As part of the defendant’s discovery and preparation, the plaintiff, at defendant’s request, was physically examined by a Dr. "A”, a neurologist, on June 27, 1988. Dr. "A” ’s report of that examination was forwarded to the plaintiffs attorney in accordance with section 202.17 of the Uniform Rules for Trial Courts (22 NYCRR). Eventually the matter came on to the Trial Calendar.
At a pretrial conference in April 1989, defendant’s attorney informed both the court and the plaintiffs attorney that Dr. "A” would be unable to testify at trial due to a disabling illness. Consequently, the defendant’s attorney orally requested that plaintiff be examined by a second neurologist, Dr. "B”, who would be available to testify. Plaintiff consented to this request and plaintiff was so examined by Dr. "B” whose report was furnished to plaintiffs attorney.
Ultimately the matter came before this court for trial. During the week of June 26, 1989 this court conducted the liability portion of the trial which resulted in a jury verdict in which defendant was held 75% negligent for the happening of the accident. On July 5, 1989 the court was about to commence the damages portion of the trial when plaintiffs attorney made the instant motion. Plaintiffs attorney has now alleged that, based upon his own investigation, he has learned that Dr. "A” is not in fact ill and is indeed available to testify. Plaintiff would have this court believe that defendant’s allegations as to Dr. "A” ’s physical condition were in fact only a subterfuge used by the defendant to induce plaintiff to allow a second neurological exam of the plaintiff by Dr. "B”. Plaintiff alleges that Dr. "A” ’s findings were inimical to the defendant’s interest and thus defendant sought to exclude said findings by using the report of Dr. "B”. Plaintiff believes that Dr. "B” ’s report is more favorable to the defendant’s interest herein. Thus, it is plaintiffs argument herein that since Dr. "A” is available to testify and that since the second neurologi *720 cal exam was in plaintiffs opinion unnecessary, Dr. "B” should be precluded from testifying at this trial.
Defendant vehemently denies that there was any subterfuge involved and that Dr. "A” was and is indeed seriously ill and unavailable to testify. Defendant argues that Dr. "B” ’s testimony is vital to his defense and that precluding him from testifying would seriously prejudice the defendant’s case.
On July 5, 1989 this court conducted a hearing with respect to plaintiffs motion. At that hearing plaintiffs attorney testified that on June 27, 1989 at about 6:30 p.m. he telephoned Dr. "A” ’s office and spoke with the doctor himself. Plaintiffs attorney stated that he informed the doctor that he was an attorney involved in defense litigation and was phoning to inquire whether the doctor did physical exams for defense purposes and whether the doctor would be available to testify in court. The attorney stated that Dr. "A” told him that he did indeed do physical exams for defense purposes and that he was available to testify. According to plaintiffs attorney, the doctor went on to state that his fee for such services was $1,500. At this point the conversation was concluded. Finally, plaintiffs attorney stated that he had recently spoken to a close friend of Dr. "A” ’s and that this friend was unaware of Dr. "A” being ill.
The defendant’s attorney testified that in early 1989 he learned that Dr. "A” was ill and was in fact receiving sophisticated treatment for a disabling condition. The defendant’s attorney went on to state that since that time and in addition to the instant case, he has appeared in a number of matters where he was obliged to inform both the court and opposing counsel that the defendant had to request an additional neurological examination since Dr. "A” was too ill to testify. Finally, the defendant’s attorney testified that on the morning of July 5, 1989, he personally phoned Dr. "A” and upon speaking with the doctor, counsel was informed by the doctor that he was too weak and tired to testify at this time. Dr. "A” further told defendant’s counsel that he (Dr. "A”) might be available to testify in mid-August of this year.
This constituted the testimony adduced at this hearing. As noted before plaintiff alleges that Dr. "A” ’s findings bolster plaintiffs claim of injuries in that said report is more favorable to the plaintiff than the report of Dr. "B”. However, the defendant’s attorney emphasized at the hearing that if Dr. "A” were able to testify at this time the defendant would have *721 certainly called the doctor. It is defendant’s position that Dr. "A” ’s opinion is helpful to defendant’s case and thus defendant would have no reason to exclude same. A review of Dr. "A” ’s report and the impressions contained therein indicates that this report is indeed supportive of the defendant’s position and that the report contains negative aspects with regard to the plaintiffs condition. This indicates that defendant’s counsel was and is acting in good faith herein since it is against the defendant’s interest not to have Dr. "A” testify.
Further, the court is well aware that under the discovery practices allowed by statute, the parties to a lawsuit may schedule as many physical exams as they see fit. (Buerger v County of Erie, 101 AD2d 1025 [1984].) Of course, if one side deems that the other is abusing this practice, he or she may move the court to limit such discovery. Usually, a defendant will schedule a number of exams by doctors who have different specialized fields of medicine. Here, however, the defendant scheduled two exams by two doctors who were both neurologists because the first neurologist, Dr. "A”, was unable to testify. Said practice was perfectly permissible and plaintiffs attorney never moved to prevent his client from being examined by the second neurologist. Indeed, plaintiff consented to Dr. "B” ’s exam when defendant explained the reason why a second exam was necessary. If, in fact, Dr. "A” were now recovered and available for trial, there would be no bar to defendant calling both Dr. "A” and Dr. "B” to testify as to their findings.
Moreover, and perhaps most crucial here, is the fact that even if defendant does not call Dr. "A” to testify, the plaintiff has the option to subpoena Dr. "A” to the witness stand. (Gilly v City of New York, 69 NY2d 509.) Of course, if the plaintiff were to do so (i.e., subpoena Dr. "A”), plaintiffs scope of inquiry would be limited to the doctor’s findings only; the doctor’s opinion would be inadmissible. Only the defendant’s counsel by calling Dr. "A” as a voluntary expert witness could elicit Dr. "A” ’s opinion on the stand. An individual cannot be compelled against his will to testify as an expert. His consent to do so is the sine qua non of expert opinions (People ex rel. Kraushaar Bros. & Co. v Thorpe, 296 NY 223). See also McDermott v Manhattan Eye, Ear & Throat Hosp. (15 NY2d 20) in which Judge Fuld stated at page 29 " ' "to compel a person to attend [a trial] merely because he is accomplished in a particular science, art, or profession, would subject the same individual to be called upon, in every cause in which any *722 question in his department of knowledge is to be solved. Thus, the most eminent physician might be compelled * * * to attend from the remotest part of the district, and give his opinion in every trial in which a medical question should arise” ’ ”. Clearly then plaintiff could not elicit Dr. "A” ’s opinion if he were to subpoena the doctor. However, it is not Dr. "A” ’s opinion that plaintiff seeks to elicit. Indeed, Dr. "A” ’s opinion is not favorable to the plaintiff and plaintiff has no desire for that opinion to be expressed. Plaintiff is very interested in having Dr. "A” ’s findings elicited before the jury, since he believes said findings to be helpful to his case. These findings he can elicit, if he chooses, by causing a subpoena to be served on Dr. "A” to testify in court. Thus, there is no prejudice to the plaintiff by allowing Dr. "B” to testify. If plaintiff truly believes that Dr. "A” is not too ill to testify and that Dr. "A” ’s findings are essential to plaintiff’s proof of damages, the law provides plaintiff with a remedy. Even without more, this fact alone would convince the court that defendant has engaged in no subterfuge to use Dr. "B” as a witness instead of Dr. "A”.
Finally, the court finds no validity in plaintiff’s allegation that the defendant’s attorney’s statement regarding Dr. "A” ’s condition was exaggerated. Dr. "A” ’s statement to plaintiff’s attorney on the phone on June 27, 1989 was, in all probability, an expression of the doctor’s hopeful optimism about his own prognosis rather than a statement evidencing his good health. It is unlikely that the doctor, or anyone else, would reveal a disabling physical condition to a stranger on the phone. The court is convinced that Dr. "A” is indeed unavailable to testify at this time.
Accordingly, plaintiff’s request that Dr. "B” be precluded from testifying is denied. Dr. "B” may testify if defendant chooses to call him to the stand as there is no evidence of bad faith or subterfuge on defendant’s part. Additionally, there is no prejudice to the plaintiff by allowing Dr. "B” to testify since plaintiff could, if he chooses, subpoena Dr. "A” in an effort to elicit his findings. In all respects, plaintiff’s motion is denied in its entirety.